UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NATHAN WENBERG,<br><br>    Plaintiff,<br><br>v.<br><br>CORRECTIONAL OFFICER DEVEAR, et al.,<br><br>    Defendants. | Case No: C 13-1951 SBA (PR)<br><br>**ORDER GRANTING SUMMARY JUDGMENT AS TO SERVED DEFENDANTS GAMBOA AND KROSSA; DISMISSING CLAIMS AGAINST UNSERVED DEFENDANT CASUSFLA; GRANTING PLAINTIFF AN EXTENSION OF TIME TO PROVIDE INFORMATION TO LOCATE UNSERVED DEFENDANT DEVEAR; AND DIRECTIONS TO CLERK** |

    Plaintiff Nathan Wenberg, a state prisoner currently incarcerated at Salinas Valley State Prison ("SVSP"), brings the instant action pursuant to 42 U.S.C. § 1983. The operative complaint is Plaintiff's First Amended Complaint ("FAC"), which alleges multiple constitutional violations, including a claim that served Defendants SVSP Physician L. Gamboa and Registered Nurse J. Krossa (collectively "Defendants") were deliberately indifferent to his serious medical needs.

    The parties are presently before the Court on Defendants' unopposed motion for summary judgment. In their motion, Defendants contend that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), prior to filing his FAC. Defendants also move to dismiss the deliberate indifference claim against them on the basis that it fails to state a claim upon which relief can be granted, and alternatively, for summary judgment on the ground of qualified immunity.

    Having read and considered the papers submitted, and being fully informed, the Court GRANTS Defendants' motion for summary judgment.

## I. BACKGROUND

The FAC alleges that on July 31, 2011, Defendants SVSP Correctional Officers Devear and Doe # 1 were working as Floor Officers, while Defendant Correctional Officer Doe #2 was working the Control Booth/Tower post and was responsible for constant visual monitoring of all activity occurring in that area of the prison.[1] According to Plaintiff, Defendant Devear along with Defendant Doe #1, without provocation, sprayed him twice with pepper spray through the food port of his cell. Plaintiff claims that Defendants Devear and Doe #1 then left Plaintiff in his cell without assessing his condition and without providing him with decontamination or medical attention for fifteen hours. Because of the puddles of pepper spray on his cell floor, Plaintiff allegedly slipped and fell, striking his left leg and hip on the steel edge of the lower bunk, thereby injuring his leg and hip. Plaintiff alleges that Defendants Devear, Doe #1, and Doe #2 ignored his pleas for help.

As a result of his fall, Plaintiff has allegedly endured constant moderate to severe pain in his left side, hip and leg, and has experienced a notably diminished function, range of motion and lack of strength in his left leg. Plaintiff claims that he now has a pronounced limp as a result of the incident, and was denied medical care immediately after and subsequent to the incident. In particular, Plaintiff made requests for an examination by an orthopedic surgeon and radiological studies (beyond the standard x-rays) to determine the nature of the injury to his left side and leg. According to Plaintiff, his requests were denied, and he received only an x-ray, which he asserts is ineffective in diagnosing his condition.

On April 29, 2013, Plaintiff filed his original complaint, Dkt. 1, which the Court screened and dismissed with leave to amend, Dkt. 7. On July 29, 2013, Plaintiff filed his FAC. Dkt. 10. Upon screening the FAC, the Court found the following Eighth Amendment claims cognizable: (1) an excessive force claim against Defendant Devear; (2) a deliberate indifference to medical needs claim against Defendants Devear, Doe #1, and Doe # 2 for failing to decontaminate Plaintiff; and (3) a deliberate indifference to medical needs claim

---

[1] Plaintiff's pleadings indicate that the date of the incident at issue was August 31, 2011; however, the record shows that the incident took place on July 31, 2011. Dkt. 42, Ex. C.

2

against Defendants Gamboa, Krossa, and Casusfla for denying him an appropriate medical evaluation of his alleged slip-and-fall injuries.

The Court ordered service as to Defendants Devear, Gamboa, Krossa, and Casusfla. Defendants Gamboa and Krossa are the only served Defendants; therefore, the remaining unserved Defendants have not joined in the instant motion for summary judgment.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with defendants, however. Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

As noted, Plaintiff has not filed an opposition to Defendants' motion. However, since

3

the FAC is verified, the Court will construe it as an opposing affidavit under Federal Rule of Civil Procedure 56, insofar as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

## III. DISCUSSION

### A. MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST

#### 1. Overview

The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." Id. at 524; Booth v. Churner, 532 U.S. 731, 739-40 (2001). Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741. A prisoner "seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." Id. at 739.

The PLRA requires *proper* exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id. at 84.

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." See Cal. Code Regs. tit. 15, § 3084.1(a). It also provides its inmates the right to file administrative appeals alleging misconduct by

4

correctional officers. See id. § 3084.1(e). Custody grievances respond "to issues with custody staff, including but not limited to inmate allegations of excessive force, harassment, or retaliation by correctional officers." Mojica Decl. ¶ 3. Health care grievances are handled separately from grievances concerning the actions of custody staff. Id. Health care grievances address inmate complaints regarding a California Correctional Health Care Services' ("CCHCS") "decision, action, condition, omission, policy or regulation that has a material adverse effect upon [their] welfare." Robinson Decl. ¶ 4.

In order to exhaust available administrative remedies within this system, a prisoner must proceed through three levels of appeal. See Cal. Code Regs. tit. 15, § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). If an inmate pursues his claims through the third-level review, the inmate has satisfied the administrative remedies exhaustion requirement under § 1997e(a). See id. at 1237-38.

Since 2008, the California Department of Corrections and Rehabilitation ("CDCR") has handled health care medical grievances separately from custody grievances. Robinson Decl. ¶ 3, note 1. The prison staff located at the respective institutions conducts the first-level and second-level review of health care grievances, and the Inmate Correspondence and Appeals Branch ("ICAB") at the CCHCS headquarters handles the third-level review. Id. ¶ 2. Meanwhile, an inmate submitting a custody grievance must pursue the following levels of appeal: (1) formal written appeal on a CDCR 602 inmate appeal form ("602 appeal"), (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the CDCR (i.e., Director's Level). See Cal. Code Regs. tit. 15, § 3084.7.[2]

An action must be dismissed unless the prisoner exhausted his available administrative remedies *before* he or she filed suit, even if the prisoner fully exhausts while the suit is pending. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). However,

---

[2] Under the regulations, as amended effective January 28, 2011, the informal grievance level has been omitted and there are now only three levels: first level appeal, second level appeal, and third level appeal. See Cal. Code Regs. tit. 15, § 3084.7. As further explained below, Plaintiff's grievances were submitted *after* January 28, 2011; therefore, the amended regulations were in effect and governs his grievances.

where an amended complaint has been filed, a prisoner satisfies the exhaustion requirement as long as he exhausted his administrative remedies *prior to* its filing. See Rhodes v. Robinson, 621 F.3d 1002, 1006 (9th Cir. 2010) (amended complaint raised new claims which arose after the original complaint was filed).

Here, Defendants contend that Plaintiff failed to exhaust his administrative remedies prior to filing his FAC, which alleged that they were deliberately indifferent to his medical needs. Thus, they argue that the deliberate indifference claim against them should be dismissed, and that summary judgment should be granted on this claim based on a failure to properly exhaust administrative remedies before filing the FAC.

### 2.  Summary of Plaintiff's Grievances

In his FAC, Plaintiff makes reference to filing only one relevant grievance—SVSP-L-11-01739, which he claims he pursued to the third-level review. Dkt. 10 at 3. However, the record shows that Plaintiff, in fact, submitted three grievances that were accepted for review between July 31, 2011 (the date of the alleged pepper spray incident), and July 29, 2013 (the date Plaintiff filed his FAC). Mojica Decl. ¶ 10, Ex. C; Robinson Decl. ¶ 6, Ex. A. Those grievances are summarized below.

1) <u>SVSP-L-11-01739</u>: On August 1, 2011, Plaintiff submitted a custody grievance against Defendant Devear regarding claims of excessive force and deliberate indifference for failure to decontaminate stemming from the July 31, 2011 pepper spray incident. Mojica Decl. ¶ 12, Ex. C. It was bypassed at the first-level review. Id. at 1. On February 29, 2012, after numerous delays due to the "[c]omplexity of the decision, action or policy," the grievance was partially granted at the second-level review because it was being referred to the Office of Internal Affairs ("OIA") for investigation. Id. at 14. On the second level review form, a box is checked indicating that the inquiry was not yet complete and that Plaintiff would be informed, upon completion, whether his allegations were sustained, not sustained, unfounded, exonerated or that no finding was possible. Id. On August 10, 2012, the OIA determined that Plaintiff's allegations were "sustained," that CDCR policy was violated, and that appropriate action would be taken. Id. at 15-16. Plaintiff submitted the

6

grievance to the third-level review on September 12, 2012, and it was assigned log number 1203485. Zamora Decl., Ex. A. On September 28, 2012, it was screened out because the supporting documents were not attached. Id. Plaintiff resubmitted it on November 6, 2012, and it was again screened out on November 13, 2012 with the notation, "Correspondence letter to inmate." Id. There is nothing in the record indicating what that letter said. Plaintiff did not resubmit the grievance after it was screened out a second time. Id.

  2) SVSP HC 11045939: On January 12, 2012, Plaintiff submitted a health care grievance requesting blood tests for Hepatitis, which was neither related to any injuries resulting from the July 31, 2011 pepper spray incident nor his subsequent slip-and-fall injuries. Robinson Decl. ¶ 7, Ex. B. On May 14, 2012, his request was granted at the second-level review. Robinson Decl., Ex. A at 1.

  3) SVSP HC 13048704: On March 15, 2013, Plaintiff submitted a health care grievance relating to a slip and fall he experienced in his cell on July 31, 2011. Robinson Decl. ¶ 8, Ex. C. Plaintiff requested an examination and evaluation by an orthopedic surgeon, an MRI/CT scan, "effective" pain management, and physical therapy. Id. This grievance was partially granted at the first and second levels of review. Id. On December 20, 2013, the grievance was denied at the third-level review because CCHCS Chief L. D. Zamora determined that "no intervention at the Director's Level of Review [was] necessary as [Plaintiff's] medical condition [had] been evaluated and [he was] receiving treatment deemed medically necessary." Id. at 1-2.

### 3. Analysis

Plaintiff alleges that Defendants Gamboa, Krossa, and Casusfla failed to provide him with an appropriate medical evaluation and subsequent treatment for his July 31, 2011 slip-and-fall injuries. Of the three grievances submitted by Plaintiff during the relevant time period, only one, grievance SVSP HC 13048704, pertains to this claim. Robinson Decl. ¶ 8, Ex. C. That grievance was denied on December 20, 2013—*five months after* Plaintiff filed his July 29, 2013 FAC. Because Plaintiff exhausted this deliberate indifference claim *after* the FAC was filed, it is unexhausted for purposes of the PLRA. See McKinney, 311 F.3d at

1199; Rhodes, 621 F.3d at 1006. Accordingly, the Court GRANTS Defendants Gamboa and Krossa's motion for summary judgment as to Plaintiff's deliberate indifference claim against them, which is dismissed without prejudice.[3] See McKinney, 311 F.3d at 1200-01 (proper course in claims dismissed due to failure to properly exhaust administrative remedies is dismissal without prejudice to refiling).

Although Defendant Casusfla has not been served and has not joined in the motion, the deliberate indifferent claim against him is subject to dismissal for the same reasons set forth above; to wit, Plaintiff has failed to controvert Defendants' showing that he had not yet exhausted his deliberate indifference claim prior to filing his original or amended complaints. See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant, where the plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant).

**B.     DOE DEFENDANTS**

In its September 5, 2013 Order of Service, the Court found the FAC alleges a cognizable deliberate indifference claim against Defendants Doe #1 and Doe #2. Dkt. 11 at 3. The use of Doe defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). Where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, the claims against Defendants Doe #1 and Doe #2 are DISMISSED from the action without prejudice. In the event Plaintiff is able to learn these Defendants' identities through discovery, he may move to file a second amended complaint to add them as named defendants. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

---

[3] The Court need not address Defendants' motion to dismiss for failure to state a claim or the issues of qualified immunity.

### C. DEFENDANT DEVEAR

In view of the above, the only claims remaining in this action are the excessive force and deliberate indifference claims against Defendant Devear, who has not yet been served. After the Marshal's initial attempt to serve Defendants, the prison claimed to have no record of Defendant Casufla and that there was "insufficient info to identify [Defendant Devear] (request first name or initial)." Dkts. 28, 30. The Court directed Plaintiff to provide the necessary information to locate both of these Defendants. Plaintiff provided additional information regarding Defendant Casufla, but not Defendant Devear. Dkts. 44, 47.

On August 12, 2014, the Court ordered the Clerk to re-serve Defendant Casufla. Dkt. 47. The Clerk did so, but also inadvertently re-served Defendant Devear. Dkt. 51. In response, the SVSP litigation coordinator sent letters to the Court stating that Defendant Devear "never worked at SVSP." Dkt. 53, 54. The letters, however, confusingly refer to this Defendant as "Deaver," not "Devear." Dkts. 53, 54. On January 22, 2015, Clerk's Office personnel attempted to contact the litigation coordinator's office at SVSP in order to inquire whether these letters were sent in error.[4] Clerk's Office personnel also provided the date of the pepper spray incident—July 31, 2011—to assist the litigation coordinator in determining which Officer Devear should be served. To date, the litigation officer has not responded to the aforementioned inquiry.

At this juncture, the Court finds that copies of the 602 inmate appeals relating to the July 31, 2011 incident may assist the SVSP litigation coordinator in locating this Defendant. Therefore, the Clerk is directed below to make a third—and final—attempt to re-serve Defendant Devear.

In addition, the Court sua sponte GRANTS Plaintiff a final extension of time to provide a first name or initial in order to locate this Defendant, as directed below.

---

[4] It is possible that the litigation coordinator made a spelling error and intended to state that Officer *Devear* never worked at SVSP. However, such a statement is directly contradicted by the record, which shows that the Marshal had originally indicated that service on an Officer *Devear* had previously been attempted, and the only reason service was ineffective was because a first name or initial was needed. Dkt. 28.

## IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Defendants Gamboa and Krossa's motion for summary judgment is GRANTED as to the deliberate indifference claim against them. Dkt. 38. The aforementioned claim is DISMISSED without prejudice to refiling in a new civil rights action. See McKinney, 311 F.3d at 1200-01. Plaintiff's deliberate indifference claim against unserved Defendant Casusfla also is DISMISSED without prejudice.

2. Plaintiff's claims against Defendants Doe #1 and Doe #2 are DISMISSED from this action without prejudice.

3. The Clerk is directed to re-serve Defendant Devear with a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, a copy of the FAC (Dkt. 10), and copies of the 602 appeal as well as the second and third level decisions relating to the July 31, 2011 pepper spray incident (Dkt. 42, Ex. C at 1-4, 14-16), with a notation to have the litigation coordinator pay special attention to the date of the incident and the correct spelling of Defendant Devear's name.

5. The time in which Plaintiff may provide the Court with the required information necessary to locate Defendant Devear will be extended up to and including **twenty-eight (28) days** from the date of this Order. **Failure to do so by the new deadline shall result in the dismissal of all claims against this Defendant, unless the Clerk's third attempt to serve Defendant Devear is successful. If service of Defendant Devear fails a third time, the Court will dismiss this Defendant pursuant to Rule 4(m) and close this case.**

6. This Order terminates Docket No. 38.

IT IS SO ORDERED.

Dated: 2/6/15

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.13\Wenberg1951.grantMSJ(exh)&re-serveDevear-rev021615.docx